IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TAMMY CARTER,**

       **Plaintiff,**

v.                                        Case No.: 3:20-cv-00672

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 16, 19).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**, the Commissioner's request for judgment on the pleadings be **GRANTED**, the Commissioner's decision be

1

**AFFIRMED,** and this case be **DISMISSED** and removed from the docket of the Court.

## I. Procedural History

Plaintiff Tammy Carter ("Claimant") protectively filed for DIB on October 30, 2017, alleging a disability onset date of May 28, 2017 due to "back issues with L4 and L5, curving of spine, severe pain; severe pain under rib cage, seems in bone and internal; knee pain and weakness; ADHD, lack of focus and concentration, loss of memory; manic depression and anxiety attack, panic attacks; PTSD from her son committing suicide in 2008; inability to accept or believe her son has passed away; paranoia and isolation from people; hopelessness and feelings of worthlessness; and stuttering issues and issues getting air to speak." (Tr. at 224, 265). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on November 13, 2019 before the Honorable Jerry Meade, Administrative Law Judge (the "ALJ"). (Tr. at 38-76). By written decision dated January 30, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 14-36). The ALJ's decision became the final decision of the Commissioner on September 16, 2020 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13). Claimant filed a Memorandum in Support of Judgment on the Pleadings, (ECF No. 16), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 19). The time period within which Claimant could file a reply to the Commissioner's response expired. Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 51 years old on her alleged disability onset date and 54 years old on the date of the ALJ's decision. (Tr. at 29). She has the equivalent of a high school education, communicates in English, and previously worked as a cook and hospital cleaner. (Tr. at 70, 264, 266).

## III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. WeinBerger*, 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree

4

of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1).

Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental function. *Id.* § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2022. (Tr. at 19, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since May 28, 2017, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the

5

following severe impairments: obesity, hernia, osteoarthritis, lumbar spine degenerative disc disease, bronchitis, right sciatica, peripheral neuropathy, adjustment disorder, depression, anxiety with stuttering, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). (*Id.*, Finding No. 3). The ALJ also considered Claimant's knee pain, paranoia, social phobia, panic disorder, rib cage pain, abdominal pain, insomnia, chronic pain syndrome, and left foot fractures, but the ALJ found that the impairments were non-severe. (Tr. at 20-21). The ALJ further found that Claimant's carpal tunnel syndrome was not a medically determinable impairment. (Tr. at 21).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 21-24, Finding No. 4). Accordingly, he determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She can occasionally climb and crawl. She can frequently balance, stoop, kneel, and crouch. She can occasionally push/pull and operate foot controls with the right lower extremity. She must avoid concentrated exposure to extreme cold; vibrations; irritants such as fumes, odors, dust, gases, and poorly ventilated areas; and hazards such as moving machinery and unprotected heights. The claimant can understand, remember, and carry out one-to-three step tasks. She can have occasional changes in the work setting. She can have no interaction with the public. She can have occasional interaction with the co-workers and supervisors. She cannot perform jobs that require frequent telephone communication or frequent verbal communication.

(Tr. at 24-29, Finding No. 5). At the fourth step, the ALJ determined that Claimant was unable to perform any past relevant work. (Tr. at 29, Finding No. 6). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 29-30, Finding Nos. 7-10). The ALJ considered that (1) Claimant was born

6

in 1965 and was defined as an individual closely approaching advanced age on the alleged disability onset date; (2) she had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that the Claimant was "not disabled" regardless of her transferable job skills. (Tr. at 29, Finding Nos. 7-9). Given these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform jobs that existed in significant numbers in the national economy, including work as a sorter, nut and bolt assembler, and product inspector. (Tr. at 29-30, Finding No. 10). Therefore, the ALJ concluded that Claimant was not disabled and was not entitled to benefits. (Tr. at 30, Finding No. 11).

## IV. Claimant's Challenges to the Commissioner's Decision

Claimant asserts two challenges to the Commissioner's decision. First, she argues that the VE "failed to provide examples of jobs that matched the hypothetical individual" that the ALJ described. (ECF No. 16 at 12). Second, Claimant contends that the ALJ failed to "produce evidence sufficient to rebut the presumption of disability." (*Id*. at 14). In response to Claimant's challenges, the Commissioner notes that Claimant only contests the step five determination that she could perform other work, and she does not challenge any other aspects of the ALJ's decision. (ECF No. 19 at 4, 4 n. 4, 15). Furthermore, the Commissioner points out that Claimant does not dispute that she could perform one of the three jobs listed by the VE, the position of "sorter." (ECF No. 19 at 9). The Commissioner asserts that Claimant can perform all three occupations identified by the VE. (*Id*. at 11). However, she explains that, even if Claimant successfully challenged the ALJ's decision regarding two of the positions, the ALJ satisfied his burden at step five because he found that Claimant could perform at least one job that exists in significant

7

numbers in the national economy. (*Id.* at 10-11). Additionally, the Commissioner contends that Claimant misinterprets the structure of the Dictionary of Occupational Titles ("DOT"), the purpose of VE testimony, and her burden to prove that she is disabled. (*Id.* at 11-16).

## V. Relevant Evidence

The undersigned examined all of the evidence in the record. However, in this case, Claimant's challenges do not concern the medical evidence, opinions, or Claimant's statements in any manner. Claimant solely challenges the ALJ's reliance on VE testimony at step five of the sequential evaluation. Therefore, the following summary is limited to the evidence that is most pertinent to the issues in dispute.

During Claimant's administrative hearing on November 13, 2019, the ALJ questioned a VE about whether a hypothetical individual with Claimant's characteristics could perform any unskilled jobs if restricted to medium exertional work and, *inter alia*, no exposure to "hazards such as moving machinery." (Tr. at 70). The VE responded that the person could work as a machine feeder, furniture inspector, or production helper. (Tr. at 70-71). The ALJ presented a second hypothetical, asking the VE if the person could work if he or she had the same limitations except the person was restricted to light exertional level jobs. (Tr. at 71). The VE responded that the hypothetical person could perform the positions of sorter, nut and bolt assembler, and product inspector. (*Id.*). In a third hypothetical, the ALJ added a manipulative limitation, and the VE responded that the person could still perform the light-level jobs that she listed. (*Id.*). Finally, the ALJ questioned the VE if a limitation to sedentary work would preclude Claimant's past work. (*Id.*). The VE responded affirmatively. (*Id.*). Claimant's counsel proceeded to question the VE regarding the vocational effects of various limitations, including restroom breaks and

being off task. (Tr. at 72-74). At the conclusion of questioning, the ALJ asked the VE if her testimony was consistent with the DOT, and the VE responded that the DOT did not address additional restroom breaks or percentage of time off task; thus, her responses to those hypotheticals were based on her education and experience. (Tr. at 74-75).

## VI. Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII. Discussion

Claimant argues that the VE listed jobs which, by their DOT definitions, were inconsistent with the ALJ's hypotheticals. Thus, she claims that the ALJ did not produce

9

evidence to rebut her "presumption of disability." Each argument is discussed below, in turn.

### A. *VE's Testimony*

In her first challenge to the Commissioner's decision, Claimant asserts that the VE "failed to provide examples of jobs that matched the hypothetical individual the Judge provided." (ECF No. 16 at 12). An ALJ must ascertain at step four of the sequential evaluation whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. § 404.1520(f). If so, the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 404.1520(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

To answer this final question of whether sufficient other work exists for the claimant in the national economy, the ALJ primarily relies on the DOT. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citing SSR 00–4p, 2000 WL 1898704, at \*2). "The ALJ may also use a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* Pursuant to SSR 00-4p, an ALJ must inquire on the record whether the VE's testimony conflicts with

10

the DOT and the ALJ must identify and elicit a reasonable explanation for and resolve conflicts between the VE's testimony and the DOT before relying on the VE's testimony as evidence to support a decision regarding whether the claimant is disabled. *Id.*; *see also Thomas v. Berryhill*, 916 F.3d 307, 313 (4th Cir. 2019), *as amended* (Feb. 22, 2019); *Lawrence v. Saul,* 941 F.3d 140, 143 (4th Cir. 2019).

In this case, the ALJ presented several hypotheticals to the VE, and the VE listed jobs at the medium exertional level, including machine feeder, furniture inspector, and production helper, and the VE provided three jobs at the light exertional level, including sorter, nut and bolt assembler, and product inspector. (Tr. at 70-71). Claimant argues that, although the VE did not provide DOT identification numbers for any of the jobs that she identified, the DOT definitions that appear to correspond to the positions of machine feeder, production helper, and nut and bolt assembler all involve exposure to machinery. (ECF No. 16 at 12-13). Therefore, Claimant contends that the jobs that the VE provided were inconsistent with the ALJ's hypothetical, which included a restriction to no "hazards such as moving machinery." (*Id.* 12). Furthermore, Claimant states that there are multiple DOT headings concerning various types of inspectors, and some of them are semi-skilled and skilled positions, which conflicts with the ALJ's hypothetical that requested the VE to identify unskilled jobs. (*Id.* at 13).

As an initial matter, the undersigned notes that the medium-level jobs, including machine feeder and production helper, are irrelevant to the decision in this matter. The ALJ found that Claimant had the RFC to perform light-level work. (Tr. at 24). Therefore, the ALJ did not rely on the VE's testimony regarding medium exertional level jobs at step five of the sequential evaluation. (Tr. at 30). An ALJ is only required to identify and resolve potential conflicts between the VE's testimony and DOT before relying on the VE's

testimony at step five. *See, e.g., Pearson v. Colvin*, 810 F.3d at 207. Therefore, even assuming *arguendo* that there was an unresolved conflict between the medium-level jobs identified by the VE and the DOT, it had no conceivable impact on the ALJ's determination that Claimant was not disabled. Claimant fails to assert a viable challenge to the Commissioner's decision regarding the jobs of machine feeder and production helper.

Turning next to the light-level jobs that the ALJ relied upon at step five, the VE listed the jobs of sorter, nut and bolt assembler, and product inspector. In the DOT, a sorter, DOT 209.687-022, is defined as someone who performs the following functions:

> Sorts data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into specified sequence or grouping, such as by address, code, quantity, and class, for such purposes as filing, mailing, copying, or preparing records.

Sorter, DOT 209.687-022, 1991 WL 671812. The position does not involve hazards such as moving machinery. *Id.* (stating "Moving Mech. Parts: Not Present - Activity or condition does not exist"). Therefore, Claimant fails to show that there was any potential conflict regarding the RFC limitation to no moving machinery and the sorter position. However, the undersigned recognizes that the DOT further provides that the sorter position requires standard vocational preparation (SVP) of level 3, meaning that it takes one to three months to learn the skills to perform the job. *Id.* Unskilled work corresponds to SVP 1 or 2, semi-skilled work corresponds to SVP 3 or 4, and skilled work corresponds to SVP 5 through 9. SSR 00-4P, 2000 WL 1898704, at *3. The ALJ did not address any potential conflict regarding the SVP level of the job and the unskilled hypothetical provided.

However, as aptly noted by the Commissioner, Claimant does not articulate any

challenge to the ALJ's conclusion that she could perform the job of sorter. In fact, Claimant does not mention the sorter position in her brief. (ECF No. 16). Moreover, any error by the ALJ regarding the sorter position is harmless, as the ALJ was only required to find that Claimant can perform at least one job that exists in significant numbers in the national economy in order to find her non-disabled. *See Richardson v. Berryhill*, No. 517CV00173RJCDSC, 2019 WL 1354042, at *4 (W.D.N.C. Mar. 26, 2019). Here, the ALJ properly relied on the VE's testimony that someone with claimant's limitations could perform another job that existed in significant numbers in the national economy, the position of nut and bolt assembler.

A nut and bolt assembler, DOT 929.587-010, is defined as someone who performs the following job functions:

> Couples and packages nuts and bolts: Screws nut on bolt by hand and holds nut in chuck of nut-turning machine that spins and tightens nut on bolt. Weighs or counts specified amounts of nuts and bolts, and records number of units on production form. Pushes box or carton along bench or onto conveyor. May tie long bolts into bundles, using wire. May feed nuts and bolts into hopper of machine that automatically couples and packages nuts and bolts.

Nut-And-Bolt Assembler, DOT 929.587-010, 1991 WL 688159. Despite the references to using machinery in the job description, the DOT specifically provides that the job of nut and bolt assembler does not present hazards involving moving mechanical parts. *Id*. (stating "Moving Mech. Parts: Not Present - Activity or condition does not exist."). The environmental limitation regarding moving mechanical parts is defined as "exposure to possible bodily injury from moving mechanical parts of equipment, tools, or machinery." *Selected Characteristics of Occupations Defined in the Revised DOT*, App. D-2, https://ssaconnect.com/tfiles/SCO-Appendicies.pdf (last visited Sept. 21, 2021). As in the present case, the job of nut and bolt assembler is often listed in response to

13

hypotheticals which restrict the individual to no exposure to moving machinery. *See, e.g., Porter v. Saul*, No. 3:20-CV-00447, 2021 WL 1377011, at *6 (S.D.W. Va. Mar. 22, 2021), *report and recommendation adopted,* 2021 WL 1381142 (S.D.W. Va. Apr. 12, 2021); *Crank v. Saul*, No. 3:20-CV-00175, 2021 WL 955913, at *3 (S.D.W. Va. Feb. 25, 2021), *report and recommendation adopted,* 2021 WL 951751 (S.D.W. Va. Mar. 12, 2021).

Therefore, Claimant's argument that there was an apparent conflict between the ALJ's hypothetical limitation of no hazards such as moving machinery and the VE's testimony that the person could perform the job of nut and bolt assembler is unavailing. In addition, the position of nut and bolt assembler has an nbSVP rating of 2, which is consistent with the hypothetical limitation to unskilled work. Nut-And-Bolt Assembler, DOT 929.587-010, 1991 WL 688159; SSR 00-4P, 2000 WL 1898704, at *3 (stating that unskilled work corresponds to SVP 1 or 2). Claimant does not assert any other errors regarding the ALJ's conclusion that Claimant could perform the job of nut and bolt assembler.

Given the fact that Claimant does not present any viable challenge that the ALJ misapplied the law at step five regarding the position of nut and bolt assembler or that his determination that Claimant could perform the position was unsupported by substantial evidence, it is unnecessary to address the third light-level occupation that the VE listed, product inspector. Indeed, the job "product inspector," without an identifying DOT number, precludes meaningful review. It does not directly correspond to a particular DOT listing, and that job title has been used to identify various positions. *See, e.g., Henderson v. Comm'r, Soc. Sec. Admin.,* No. 2:16-CV-3688-JMC-MGB, 2018 WL 846758, at *3 (D.S.C. Jan. 24, 2018), *report and recommendation adopted sub nom. Henderson v. Berryhill,* No. 2:16-CV-03688-JMC, 2018 WL 835218 (D.S.C. Feb. 13,

2018) (referring to DOT 739.687-102 gasket inspector as a product inspector); *Shoulders v. Berryhill,* No. 2:17-CV-13, 2018 WL 3069204, at *9 (N.D.W. Va. Jan. 16, 2018), *report and recommendation adopted,* No. 2:17-CV-13, 2018 WL 1419342 (N.D.W. Va. Mar. 22, 2018) (referring to DOT 669.687–014 dowel inspector as a product inspector).

Nonetheless, to the extent that the ALJ did not seek clarification from the VE regarding the job of product inspector or elaborate upon his step five finding regarding that job in the decision, such error is harmless because the ALJ properly concluded that Claimant could perform the unskilled light-level of job of nut and bolt assembler. *See, e.g., Richardson,* 2019 WL 1354042, at *4 (stating that even if the ALJ failed to resolve an apparent conflict, it would constitute harmless error because the VE identified another job that the claimant could perform). For all of the above reasons, the undersigned **FINDS** that the ALJ properly relied on the VE's testimony at step five of the sequential evaluation.

### B. *Presumption of Disability*

In her second challenge to the Commissioner's decision, Claimant contends that the ALJ failed to produce evidence sufficient to rebut the presumption of disability. (ECF No. 16 at 14). Claimant does not develop this argument in her brief, and there is no "presumption of disability" under the Social Security Act, as Claimant suggests. A claimant is ultimately responsible for proving that he or she is disabled, and that responsibility never shifts to the Commissioner. To the extent that Claimant is suggesting that the ALJ failed to demonstrate, at the fifth step of the sequential evaluation process, that Claimant was capable of performing jobs which existed in significant numbers in the economy, that suggestion is without merit. As discussed, the ALJ determined with the assistance of a VE that other jobs were available in significant numbers in the national

economy that Claimant could perform despite her vocational factors and history, including work as a nut and bolt assembler. If Claimant argues that the Court should independently reevaluate Claimant's case, and reach different conclusions than the ALJ, the undersigned **FINDS** that such contention is without any legal basis.

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 16); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 19); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140

(1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 30, 2021

Cheryl A. Eifert
United States Magistrate Judge